IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MANJIT SANGHA,                    *
                                  *
        Plaintiff,                *
                                  *
v.                                *    CIVIL ACTION NO. 18-00131-KD-B
                                  *
NAVIG8 SHIP MANAGEMENT PTE        *
LTD., *et al.*,                   *
                                  *
        Defendants.               *

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Navig8 Ship Management Pte. Ltd.'s motion to dismiss. (Doc. 9). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Defendant's motion to dismiss for lack of personal jurisdiction be DENIED, that Defendant's motion to dismiss on the basis of *forum non conveniens* be DENIED, that Defendant's motion to dismiss for failure to state a claim be DENIED, and that Defendant's motion for more definite statement be GRANTED IN PART and DENIED IN PART. The undersigned also recommends that Defendant Navig8 Group be DISMISSED without prejudice as a Defendant in this matter, based upon the stipulation of the parties.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Manjit Sangha ("Capt. Sangha"), a citizen of the Republic of India, was granted permanent residency status in the United States in 2015 and resided in Boca Raton, Florida during all periods relevant to this action.  (Doc. 14-1 at 1).  From 2009 until October 2015, Capt. Sangha was employed by Defendant Navig8 Ship Management Pte. Ltd. ("Navig8") as a master on the M/V MISS CLAUDIA ("M/V Miss Claudia"), which sailed out of Harris County, Texas.  (Doc. 1 at 2).  According to Capt. Sangha, his employment relationship with Navig8 was "formed and executed" in the state of Texas.  (Id.).

Navig8 is a Singaporean company, with offices in Singapore, London, and India.  (Doc. 15-1 at 1).  Navig8 is a technical manager of ships, with responsibility for maintaining ships and providing crews, as it did when it assigned Capt. Sangha to work as master of the M/V Miss Claudia.  (Doc. 15 at 8; Doc. 15-1 at 1-2).  The M/V Miss Claudia is time chartered by other companies for worldwide service, but at all times relevant to this lawsuit, the vessel was deployed as a "bunker barge" in the Gulf of Mexico, primarily loading bunker fuel in the port of Houston for delivery to other vessels in the Gulf of Mexico.  (Doc. 15-1 at 1-2).

In October 2015, while Capt. Sangha was serving as a master on the M/V Miss Claudia, the ship collided with another vessel, the M/V EURONIKE ("M/V Euronike"), in the Gulf of Mexico.  (Doc.

1 at 2; Doc. 9-5). The collision resulted in damage to both ships. (Id.). After the collision, the M/V Miss Claudia dry-docked in Mobile, Alabama for approximately four months for repairs. (Doc. 1 at 2-3). Although Capt. Sangha maintains that the collision between the vessels was not his fault and that he took corrective action that limited the damage to the M/V Miss Claudia, Navig8 chose not to renew his contract after the collision. (Id.).

In March 2016, Capt. Sangha entered into an employment contract with Marine Consultancy LLC ("Marine Consultancy") to serve as a mooring master on ships operating in the Gulf of Mexico. (Id. at 3). As a mooring master, Capt. Sangha was to conduct independent mooring operations and supervise ship-to-ship fuel transfer operations in the Gulf of Mexico. (Id.). Capt. Sangha reported to Marine Consultancy's principal, Capt. Johannes Schild ("Capt. Schild"), who maintains Marine Consultancy's main office in Daphne, Alabama. (Id.).

Capt. Sangha's first assignment with Marine Consultancy was aboard the M/V SONGA PEARL ("M/V Songa Pearl"). (Id.). On April 9, 2016, the M/V Songa Pearl was tasked with loading bunker fuel from the M/V Miss Claudia so that the M/V Songa Pearl could then refuel other ships in the Gulf of Mexico. (See Doc. 1 at 3; Doc. 9-5 at 4-5; Doc. 14-1 at 2-3). Before the ship-to-ship transfer operation occurred, Navig8 learned that Capt. Sangha would be the mooring master on the M/V Songa Pearl during the upcoming bunker

fuel loading operation. (Doc. 1 at 3; Doc. 9-5 at 4). Capt. Sangha alleges that upon learning that he had been assigned to the fuel exchange between the M/V Miss Claudia and the M/V Songa Pearl, employees of Navig8 and/or a company named Glencore[1] reached out to Capt. Sangha's supervisor, Capt. Schild, in Daphne, Alabama and informed him that Navig8 required that Marine Consultancy terminate Capt. Sangha's employment. (Doc. 1 at 3). As a result, Capt. Sangha was removed from the M/V Songa Pearl while it was docked in Houston, Texas. (Id.). Capt. Sangha alleges "upon information and belief" that Navig8 made false and misleading statements about him to his employer in order to effectuate his termination. (Id.). Additionally, Capt. Sangha alleges that Navig8 sent emails to Capt. Schild that contained false and/or misleading statements intended to damage Capt. Sangha and his professional reputation and character. (Id.). Capt. Sangha further asserts that "[d]efendants acted in malicious fashion in order to discredit Capt. Sangha and destroy his ability to work as a captain and mooring master in the Gulf of Mexico." (Id. at 4). Capt. Sangha maintains that "Defendants' [sic] made false statements and told half-truths in a misleading manner and these statements, when viewed in the proper context, were wholly false, libelous, and slanderous." (Id. at 4-5). Capt. Sangha also

---

[1] Capt. Sangha alleges that Navig8 contracted the operation of the M/V Miss Claudia to Glencore. (Doc. 1 at 3).

alleges that Defendants' actions resulted in extreme business disruption for him, loss of income, moving expenses, mental anguish, emotional distress, and other financial losses including the loss of business goodwill. (Id. at 4).

Capt. Sangha filed suit against Navig8 and Navig8 Group in Harris County, Texas on July 19, 2016. (Doc. 9-2). In the Texas lawsuit, Capt. Sangha asserted various state law tort claims, including tortious interference with his employment contract with Marine Consultancy, defamation, tortious interference with current and prospective relations and economic advantage, intentional infliction of emotional distress, and fraud. (Id.).

Navig8 removed the case to the federal district court for the Southern District of Texas based upon its assertion that Capt. Sangha's claims fell within the original admiralty or maritime jurisdiction of the federal courts. Sangha v. Navig8 ShipManagement Private Ltd., 882 F.3d 96, 99 (5th Cir. 2018).[2] Thereafter, Navig8 filed a motion to dismiss under, *inter alia*, Federal Rule of Civil Procedure 12(b)(2). Id. Navig8 argued that the case should be dismissed because the court lacked personal jurisdiction over Navig8 and based on the application of the doctrine of *forum non conveniens*. Id. The district court, after

---

[2] Capt. Sangha sought to have the case remanded to state court, but the district court dismissed the case without addressing whether federal subject matter jurisdiction existed. Sangha, 882 F.3d at 99.

permitting limited jurisdictional discovery, dismissed Capt. Sangha's claims. Id. The district court concluded that Navig8 did not have sufficient contacts with the State of Texas to permit the exercise of personal jurisdiction, and that dismissal was also warranted under the *forum non conveniens* doctrine. Id.

Capt. Sangha appealed and argued primarily that the district court abused its discretion by not addressing his challenge to federal subject-matter jurisdiction before dismissing the case based on the issues of personal jurisdiction and *forum non conveniens*. Id. The Fifth Circuit Court of Appeals affirmed the district court's dismissal on personal jurisdiction grounds and found that under the circumstances of the case, the district court acted within its discretion in deciding the personal jurisdiction and *forum non conveniens* issues without addressing the issue of subject-matter jurisdiction. Id. at 100-04.

Capt. Sangha then filed this action, asserting causes of action for tortious interference with existing contract, defamation, tortious interference with current and prospective relations and economic advantage, and intentional infliction of emotional distress. (See Doc. 1). On July 6, 2018, Navig8 filed the instant motion seeking dismissal of Capt. Sangha's lawsuit on jurisdictional grounds and for failure to state a claim or, in the alternative, a more definite statement by Capt. Sangha, along with an accompanying memorandum. (Docs. 9, 9-1). Navig8 contends that

this Court lacks personal jurisdiction over it and is consequently precluded from adjudicating this claim. (Doc. 9-1 at 4-13). Navig8 argues that Capt. Sangha has failed to allege and cannot show that Navig8 has ever had continuous and systematic contacts with Alabama sufficient to establish a prima facie case of general jurisdiction in the state. (Id. at 5-6). Navig8 further avers that the Court lacks specific jurisdiction over it because its contacts with Alabama are minimal, consisting only of a few email exchanges with Capt. Sangha's employer, by way of Capt. Schild, who is located in Alabama. (Id. at 8). According to Navig8, these emails were not purposeful contacts with the forum state; rather, they were merely "fortuitous contacts with a third-party who happens to have an office here." (Id.). Alternatively, Navig8 asks the Court to dismiss the case under the doctrine of *forum non conveniens*. (Id. at 19-21).

Navig8 also seeks dismissal of Capt. Sangha's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Id. at 13-19). As an exhibit to its motion, Navig8 attaches the email correspondence concerning Capt. Sangha that was exchanged between Navig8 representatives and Capt. Schild from April 9, 2016 through April 11, 2016. (Doc. 9-5). This correspondence includes two emails sent by Navig8 representative Manish Gupta to Capt. Schild on April 9, 2016, one email sent by Navig8 representative Prashaant

Mirchandani to Capt. Schild on April 10, 2016, and Capt. Schild's replies to each of those emails. (See id.). In their emails, Gupta and Mirchandani stated to Capt. Schild that Capt. Sangha was not to be involved in ship-to-ship operations involving the M/V Miss Claudia. (Id. at 1-2, 4). Navig8 contends that the emails do not support the legal claims alleged in Capt. Sangha's complaint.

Navig8 argues that if the complaint is not dismissed for jurisdictional reasons or failure to state a claim, judicial economy and the interests of justice will be served by requiring Capt. Sangha to amend his complaint to "provide sufficient notice as to how Navig8's request that Capt. Sangha not be involved with the Miss Claudia's operations during a pending investigation and lawsuit caused or is related to the allegations in the four counts." (Doc. 9-1 at 21-22). Finally, Navig8 asserts that Navig8 Group is not a separate legal entity, but instead a term used to refer collectively to a group of entities, and that Navig8 Group should therefore be dismissed as a Defendant. (Id. at 22).

In his opposition to Navig8's motion, Capt. Sangha consents to the dismissal of Navig8 Group without prejudice. (Doc. 14 at 3). He also concedes the absence of general jurisdiction over Navig8 in Alabama. (Id.). Capt. Sangha argues, however, that the Court has specific personal jurisdiction over Navig8 because Navig8 employees or representatives purposefully communicated with

Capt. Schild to interfere with Capt. Sangha's "Alabama employment relationship which ended up causing the employer to terminate that relationship." (Id. at 5). Capt. Sangha contends that "Marine Consultancy's presence in Alabama is obvious[,]" and that the "brunt of the injury" was suffered in Alabama, because the communications and emails harmed his reputation in the eyes of his Alabama employer. (Id.). In addition, Capt. Sangha requests that in the event the Court concludes that it lacks specific jurisdiction over Navig8, he be permitted to conduct discovery to determine whether jurisdiction exists under Rule 4(k)(2). (Id. at 7). As to the *forum non conveniens* issue, Capt. Sangha contends that Navig8 has provided no evidence of the existence of an adequate foreign forum and argues that the private and public interest factors favor trying the case in Alabama. (Id. at 9-11).

## II.  DISCUSSION

### A.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

As a threshold matter, the Court must determine whether it has personal jurisdiction over Navig8. "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims. A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." Republic of Pan. v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997) (citations omitted).

### 1.    Standard of Review

The issue of whether a court has personal jurisdiction over a defendant is a question of law. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010). Rule 12 of the Federal Rules of Civil Procedure allows a party to assert the defense of lack of personal jurisdiction by motion. See Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted); see also Hard Candy, LLC v. Hard Candy Fitness, LLC, 106 F. Supp. 3d 1231, 1238 (S.D. Fla. May 13, 2015). The court "must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." Vision Media TV Grp., LLC v. Forte, 724 F. Supp. 2d 1260, 1263 (S.D. Fla. 2010).

If the defendant meets its burden of submitting affidavits or other competent evidence to challenge the plaintiff's jurisdictional allegations, the burden shifts back to the plaintiff to "substantiate the jurisdictional allegations in the complaint by affidavits, testimony or documents." Id. at 1263-64; see also Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc., 719 F. Supp. 2d 1333, 1334 (M.D. Ala. 2010) ("In other words, the plaintiff cannot respond merely by relying on the jurisdictional

allegations in its complaint but must substantiate those allegations by affidavit or other component proof.").

"[W]here the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988) (citation omitted). Notwithstanding the burden-shifting framework identified herein, "[i]t goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).

Under the due process clause, "a State may authorize its courts to extend personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair place and substantial justice.'" Daimler AG v. Bauman, 571 U.S. 117, 126 (2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "The Due Process Clause, by ensuring the 'orderly administration of the laws,' gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide

_Volkswagen Corp. v. Woodson_, 444 U.S. 286, 297 (1980) (internal citation omitted).

When faced with a Rule 12(b)(2) motion, "the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision[3] and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." _Continental Motors, Inc. v. Jewell Aircraft, Inc._, 882 F. Supp. 2d 1296, 1306 (S.D. Ala. 2012) (citation omitted). "In this case, the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." _Sloss Indus. Corp. v. Eurisol_, 488 F.3d 922, 925 (11th Cir. 2007). Thus, the Court must determine whether the exercise of personal jurisdiction over Navig8 comports with the constitutional guarantees of due process.

The particulars of the constitutional analysis depend on whether the type of personal jurisdiction asserted in a case is

_____

[3] Alabama's long arm rule provides, in relevant part:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States . . . .

Ala. R. Civ. P. 4.2(b) (effective Aug. 1, 2004).

"general" or "specific." Facts supporting personal jurisdiction "may be general, which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim." Continental Motors, 882 F. Supp. 2d at 1307 (citation omitted). General jurisdiction "refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose" because the defendant is at home in the forum. Oldfield, 558 F.3d at 1220 n.27. As noted, Capt. Sangha concedes that no general jurisdiction exists over Navig8 in Alabama. Instead, he asserts that the Court has specific jurisdiction over Navig8 in this matter.

"Specific jurisdiction refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'" PVC Windoors, 598 F.3d at 808 (quoting Oldfield, 558 F.3d at 1220 n.27). "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state." Walden v. Fiore, 571 U.S. 277, 284 (2014) (citation omitted) (emphasis in original). Courts within the Eleventh Circuit apply a three-part due process test to determine whether specific personal jurisdiction is present, namely:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant

> purposefully availed himself of the privilege of
> conducting activities within the forum state, thus
> invoking the benefit of the forum state's laws; and (3)
> whether the exercise of personal jurisdiction comports
> with traditional notions of fair play and substantial
> justice.

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th

Cir. 2013) (citations and internal quotation marks omitted). The

plaintiff bears the burden of establishing each of the first two

prongs, and if the plaintiff does so, the defendant must make a

"compelling case" that exercising jurisdiction would violate

tradition notions of fair play and substantial justice. Id.

### 2. Analysis

Navig8 argues that specific jurisdiction is absent because

its alleged contacts with Alabama, consisting of three emails from

its representatives to Capt. Sangha's supervisor, were not

expressly aimed at Alabama. Navig8 argues that it could not

reasonably have anticipated that Capt. Sangha would suffer harm in

Alabama based on the emails to his supervisor, Capt. Schild, who,

according to Navig8, just happened to be located in Alabama. Capt.

Sangha retorts that the emails were "purposeful communication" to

his Alabama employer in order to harm his reputation in his

employer's eyes, and that the brunt of the injury was suffered in

Alabama. The Court must perform the three-pronged due process

analysis outlined above to determine whether specific personal

jurisdiction exists over Navig8 in this case.

To determine whether exercising jurisdiction is appropriate, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, 465 U.S. 783, 788 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18 (1985) (citation omitted). The Eleventh Circuit has recognized that "[i]ntentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." Licciardello v. Lovelady, 544 F.3d 1280, 1285 (11th Cir. 2008). However, "some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum." Burger King, 471 U.S. at 475 n.18 (citations and internal quotation marks omitted).

In assessing the first prong of the three-part due process test, whether the litigation arises out of or relates to the defendant's contacts with the forum, the Court's "inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation." Louis Vuitton, 736 F.3d at 1355-56. It is "not enough that there be some *similarity* between the activities that connect the defendant to the forum and the plaintiff's claim." Lovelady, 544 F.3d at 1284 n.3 (emphasis in

original).  Rather, for a claim to have arisen from a defendant's contacts with the forum, those contacts must be "related to the operative facts of the controversy[.]"  Id.  Here, the first prong of the test is met because Capt. Sangha's intentional tort claims all arise out of Navig8's communications to Capt. Sangha's employer in Alabama.

The second prong of the due-process test, which focuses on whether Navig8 "purposefully availed" itself of the privilege of conducting activities within Alabama, presents a more complicated issue.  The Eleventh Circuit has two applicable tests for determining whether purposeful availment has occurred in intentional tort cases.  Louis Vuitton, 736 F.3d at 1356.  The first of these is the effects test articulated by the U.S. Supreme Court in Calder.[4]  Louis Vuitton, 736 F.3d at 1356.  Under the effects test, even a single tortious act by a defendant can establish purposeful availment, without regard to whether the

---

[4] In Calder, a California plaintiff sued a Florida magazine and two of its employees in California state court based on an allegedly libelous article about the plaintiff that was disseminated nationally, including in California.  465 U.S. at 784-86.  In affirming personal jurisdiction, the Supreme Court created the "effects test" and held that personal jurisdiction existed over the defendants because "their intentional conduct in Florida [was] calculated to cause injury to [the plaintiff] in California."  Id. at 791.  The Court found that the defendants knew the brunt of harm to the plaintiff's reputation would be suffered in California and concluded that California was "the focal point both of the story and of the harm suffered."  Id. at 788-790.

defendant had any other contacts with the forum state, if the tort "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Id. (citation and internal quotation marks omitted). The Court may also apply the traditional minimum contacts test, which asks whether the defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Id. at 1357. Purposeful availment is established when either, or both, of these tests are satisfied. Id. Because the Calder effects test is "generally considered the more appropriate measure of purposeful availment" when an intentional tort is alleged, the Court will begin the purposeful availment analysis by applying that test to the case at hand. See Tobinick v. Novella, 2015 U.S. Dist. LEXIS 8085, at *21, 2015 WL 328236, at *7 (S.D. Fla. Jan. 23, 2015) (citing Oldfield, 558 F.3d at 1221).

Here, the first element of the "effects test" is met because Navig8 representatives allegedly committed intentional acts by contacting Capt. Sangha's supervisor, Capt. Schild, in Alabama and informing him that Navig8 demanded Capt. Sangha's termination, making false and misleading statements about Capt. Sangha to Capt.

17

Schild in order to effectuate his termination, and sending Capt. Schild false and misleading emails concerning Capt. Sangha. See Sunny Handicraft (H.K.) Ltd. v. Edwards, 2017 U.S. Dist. LEXIS 39183, at *18, 2017 WL 1049842, at *6 (N.D. Ill. Mar. 20, 2017) ("First, by sending the allegedly defamatory e-mails, Edwards engaged in intentional and allegedly tortious conduct.").

As to the second element, there appears to be little question that the allegedly tortious communications and emails were directed to and purposefully sent to Capt. Sangha's supervisor, Capt. Schild, who is located in Alabama. Navig8 contends there is nothing in the emails that would have alerted its representatives that Capt. Schild and Marine Consultancy were located in Alabama. However, a fair reading of the complaint shows that Capt. Sangha alleges that in addition to the emails, Navig8 employees reached out to his supervisor in Alabama and demanded his termination and made false and misleading statements in order to effectuate his termination and ruin his professional reputation. Moreover, Navig8 has come forth with no competent evidence demonstrating that it was unaware at the time of the relevant emails and other alleged communications that Capt. Schild and Plaintiff's employer were based in Alabama. Construing all reasonable inferences in the light most favorable to Capt. Sangha, the Court finds that Capt. Sangha has sufficiently alleged that Defendant purposefully directed communications to his employer in Alabama. See Range

Creek Holdings, LLC v. Cypress Capital II, LLC, 2009 U.S. Dist. LEXIS 23951, at *17, 2009 WL 857533, at *6 (S.D. Ala. Mar. 25, 2009) ("[I]t appears that all of the communications that gave rise to this case were directed at an individual who was physically present in the state of Alabama. This allegation is supported by the fact that Utah Reverse, Water Canyon, Range Creek, and Patmos all share one common address in Daphne, Alabama. Given that this case is rooted in what the defendants told the plaintiffs orally and in writing, . . . this case arose out of alleged misdeeds that the defendants directed at the state of Alabama.") (internal citations omitted).

Navig8 argues that the third element of the effects test is not met because it could not reasonably have anticipated its activity to cause injury in Alabama, since Capt. Sangha is a Florida resident and Indian citizen who worked in international waters on ships that primarily sailed out of Houston, Texas. According to Navig8, even if its emails did create an effect in Alabama, it was mere happenstance that Capt. Schild was based in the state, which is not sufficient to meaningfully connect Navig8's conduct to the forum.

As a preliminary matter, a plaintiff's lack of residence in the forum state will not necessarily defeat jurisdiction if defendant's contacts with the forum state are sufficient. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984). In

Keeton, a New York resident sued Hustler in New Hampshire, claiming that she had been libeled in five separate issues of the national magazine, which sold some 10,000 to 15,000 copies per month in New Hampshire. Id. at 772. Concluding that specific jurisdiction was present, the Supreme Court relied principally on the connection between the circulation of the magazine in New Hampshire and damage allegedly caused within the State. The Court stressed that even though the subject of the libel resided elsewhere, "[f]alse statements of fact harm both the subject of the falsehood and the readers of the statement." Id. at 776 (emphasis deleted).

As the foregoing would suggest, it is a well-established maxim that "a defamation injury occurs in any state where the allegedly defamatory statement was published." Sunny Handicraft, 2017 U.S. Dist. LEXIS 39183, at *18, 2017 WL 1049842, at *6; see also Keeton, 465 U.S. at 777 ("The tort of libel is generally held to occur wherever the offending material is circulated. The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.") (internal citation omitted); Strabala v. Zhang, 318 F.R.D. 81, 110 (N.D. Ill. 2016) ("[T]he injury occasioned in a defamation case, like a libel case, occurs in the state where the e-mail recipients are located."); Campbell v. Campbell, 262 F.

Supp. 3d 701, 708 (N.D. Ill. 2017) ("An individual who sends to another person's employer messages like the ones at issue here can reasonably expect to be haled into court where the messages were sent.").

The Court has already rejected Navig8's assertion concerning the allegedly "fortuitous" connection between its communications with Capt. Sangha's employer and the state of Alabama. Having done so, the Court is not persuaded by Navig8's argument that it could not reasonably have anticipated that its communications with Capt. Sangha's employer would cause injury in Alabama. Although Capt. Sangha alleges four separate intentional tort causes of action, each of his claims arise directly from allegedly defamatory, false, and misleading statements made in communications directed to his employer in Alabama. Since the allegedly tortious communications were made to Capt. Sangha's employer in Alabama, the third prong of the effects test is met, and the Court finds that Capt. Sangha has satisfied the effects test set forth in Calder. Accordingly, Capt. Sangha has established the "purposeful availment" prong of the three-part due process test. Because the Court finds that Capt. Sangha has established purposeful availment under the Calder effects test, it need not perform a traditional minimum contacts analysis.

Having found that Navig8 has constitutionally sufficient contacts with the state of Alabama, the Court now must consider

whether the exercise of jurisdiction over Navig8 would nevertheless offend "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Relevant factors in this determination "include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." Lovelady, 544 F.3d at 1288 (citation omitted). Navig8 states that it does not systematically engage in any business with the United States or own or lease any real property in this country. (Doc. 15-1). Navig8 emphasizes that it is not incorporated in any state in the United States, has no office here, pays no taxes here, has no officers or shareholders located here, and does not have an agent for service of process in the United States. (Id.). Navig8 points out that neither it nor Capt. Sangha are Alabama residents or even U.S. citizens and that there are no questions of Alabama law at issue. (Doc. 9-1 at 21). It argues that "foreseeable administrative difficulties" are likely to burden a busy court with a case "that really has no connection with Alabama." (Id.).

The undersigned agrees that Navig8's demonstrated contacts with the state of Alabama consist of the subject communications with Plaintiff's employer and Navig8's unrelated involvement in the one-time repair of the M/V Miss Claudia performed at a Mobile

shipyard. Accordingly, there will certainly be some burden on Navig8 to defend this case in Alabama. However, Navig8 is an international company with offices and employees across the globe. It is accustomed to complying with regulatory obligations in various countries. (See Doc. 15-1 at 2). While defending a lawsuit in Alabama will undoubtedly present some burden on Navig8, the burden will not be as great as it would be on a foreign defendant accustomed to operating only in its native country.

Despite Navig8's assertion to the contrary, both Alabama and the judicial system have a significant interest in adjudicating this dispute. As the Supreme Court noted in Keeton, "[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement. [A state] may rightly employ its libel laws to discourage the deception of its citizens." Keeton, 465 U.S. at 776 (emphasis in original). Further, a state "may also extend its concern to the injury that in-state libel causes within [the state] to a nonresident." Id. The plaintiff, Capt. Sangha, also has a strong interest in obtaining convenient and effective relief in the forum in which he allegedly suffered injury. As the relevant factors militate in favor of exercising jurisdiction over Navig8, it does not offend traditional notions of fair play and substantial justice for the Court to exercise such jurisdiction. Accordingly, Navig8's motion to dismiss on the basis of lack of personal jurisdiction is due to be DENIED.

**B.    FORUM NON CONVENIENS**

Navig8 also argues that the Court should dismiss this case based on the doctrine of *forum non conveniens* because Singapore is a more appropriate forum to decide this matter.

**1.    Standard of Review**

Under the doctrine of *forum non conveniens*, a district court may dismiss an action, even if jurisdiction and venue are proper, if a foreign court is a more appropriate and convenient forum for adjudicating the matter. See Inverpan v. Britten, 646 F. Supp. 2d 1354, 1356 (S.D. Fla. 2009) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981)).  To obtain dismissal on *forum non conveniens* grounds, the moving party must "establish that '(1) an adequate alternate forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'"  Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting Leon v. Millon Air, Inc., 251 F.3d 1305, 1310–11 (11th Cir. 2001)).  "In a *forum non conveniens* inquiry, courts show deference to and consider the 'strong presumption' in favor of a plaintiff's choice of forum."  J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., 515 F. Supp. 2d 1258, 1270 (M.D. Fla. 2007) (citations omitted).  This presumption in favor of the plaintiff's forum choice "is at its strongest when the plaintiffs are citizens, residents, or corporations of this

country." SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004). The Eleventh Circuit has long recognized that "'positive evidence of unusually extreme circumstances' must be present and that the court must be 'thoroughly convinced that material injustice is manifest' before ousting a domestic plaintiff from this country's courts." Id. at 1102 (quoting La Seguridad v. Transytur Line, 707 F.2d 1304, 1308 n.7 (11th Cir. 1983)). Nevertheless, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Piper Aircraft, 454 U.S. at 255 n.23.

**2.  Analysis**

**i.  The Availability of an Adequate Alternate Forum**

The first requirement for a dismissal on the basis of *forum non conveniens* is the existence of an adequate and available alternate forum. See Leon, 251 F.3d at 1311. An alternate forum is available when the foreign court can assert jurisdiction over the litigation. Id. Typically, this requirement is satisfied "when the defendant is 'amenable to process' in the other jurisdiction." Piper Aircraft, 454 U.S. at 254 n.22 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947)). Here, Navig8 provides a declaration of counsel who confirms that Navig8 is

domiciled in Singapore and operates out of Singapore, India, and London. (Doc. 15-1 at 1). This evidence indicates that Navig8 is amenable to service of process in Singapore. The Court notes that Navig8 has not submitted any affidavits or declarations expressly consenting to service of process in Singapore or agreeing to waive any applicable statute of limitations or other defenses that may bar reinstatement of this case in Singapore. However, there is no justifiable reason to doubt that Navig8 will cooperate with a Singapore forum, and the evidence establishes that Navig8 is a citizen of Singapore and therefore subject to jurisdiction there. See Deirmenjian v. Deutsche Bank, A.G., 2006 U.S. Dist. LEXIS 96772, at *16, 2006 WL 4749756, at *5 (C.D. Cal. Sept. 25, 2006) (finding declarations of in-house counsel that defendants are organized under German law and have their principal place of business in Germany sufficient to establish amenability to service of process in Germany); Montgomery v. Oberti, 945 F. Supp. 2d 1367, 1374 (S.D. Fla. 2013) (finding defendants' affirmative argument that "the Bahamas is a more convenient and appropriate forum" an implicit representation "that they would subject themselves to the jurisdiction of the Bahamian courts"). Accordingly, the Court concludes that Navig8 has demonstrated that Singapore is an available alternate forum.

Having determined that Singapore exists as an available forum, the Court must next decide whether it is an adequate forum.

An alternate forum is inadequate "only in rare circumstances where the remedy offered by the other forum is clearly unsatisfactory." Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1290 (11th Cir. 2009) (citation and internal quotation marks omitted). The remedy offered by the other forum is inadequate when it is "no remedy at all." Piper Aircraft, 454 U.S. at 254; see Aldana, 578 F.3d at 1290. Navig8 has failed to provide any evidence as to the adequacy of Singapore as a forum, instead relying on the conclusory statement that "[t]here should be no argument that the Singapore court that has jurisdiction over Navig8 is an adequate and available forum." (Doc. 9-1 at 20); see Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988) (stating that a court's forum non conveniens inquiry does not require extensive investigation and may be resolved on affidavits presented by the parties). However, in the Eleventh Circuit, a defendant bears the ultimate burden of persuading the court that a forum is adequate only when the plaintiff has made substantiated allegations that the other forum is inadequate. See Leon, 251 F.3d at 1312 ("We think this was the correct approach: defendants have the ultimate burden of persuasion, but only where the plaintiff has substantiated his allegations of serious corruption and delay. Thus, where the allegations are insubstantially supported, . . . a District Court may reject them without considering any evidence from the defendant."); J.C. Renfroe, 515 F. Supp. 2d at 1268 ("An

alternative forum is 'presumed "adequate" unless the plaintiff makes some showing to the contrary.'") (quoting <u>Leon</u>, 251 F.3d at 1312); <u>Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.</u>, 159 F. Supp. 3d 1316, 1329–30 (S.D. Fla. 2016), <u>appeal dismissed</u>, (May 9, 2016) ("In this Circuit, an alternative forum is presumed adequate unless the plaintiff makes some showing to the contrary, through, for example, substantiated . . . allegations of serious corruption or delay. <u>Leon</u> is clear that while defendants do have the ultimate burden of persuasion to establish adequacy, they bear this burden only where the plaintiff substantiates its allegations of corruption or delay.") (citations and internal quotation marks omitted). Capt. Sangha argues that Navig8 "has put no evidence before the Court that there is any remedy available to Capt. Sangha in Singapore." (Doc. 14 at 8). However, Capt. Sangha fails to make or substantiate any allegations that Singapore is inadequate as a forum in this matter. Accordingly, the Court finds that Singapore exists as an adequate and available alternate forum.[5]

---

[5] <u>See Creative Technology, Ltd. v. Aztech System PTE, Ltd.</u>, 61 F.3d 696, 703 (9th Cir. 1995) ("If our courts can entertain actions under the copyright laws of foreign nations, we see no reason why the High Court of Singapore is incapable of doing the same if need be."); <u>Zipfel v. Halliburton Co.</u>, 832 F.2d 1477, 1484 (9th Cir. 1987) (finding that defendants carried their burden of proving that Singapore existed as an adequate alternative forum). <u>But see Dandong v. Pinnacle Performance Ltd.</u>, 2011 U.S. Dist. LEXIS 126552, at *17–18, 2011 WL 5170293, at *6 (S.D.N.Y. Oct. 31, 2011) (concluding that Singapore was an inadequate forum because of "Singapore Order 38 rule 18, which forbids the serving of a subpoena on anyone that is outside of Singapore's jurisdiction").

## ii. The Private and Public Interest Factors

The Court must next determine whether "the weight of private and public interests support disturbing the [plaintiff's] original choice of forum." Haddad v. RAV Bahamas, Ltd., 2008 U.S. Dist. LEXIS 29028, at *12, 2008 WL 1017743, at *4 (S.D. Fla. Apr. 9, 2008) (citing SME Racks, 382 F.3d at 1101). Although the Eleventh Circuit has found that private and public interests should be considered in all cases, the Court must first examine the private factors, maintaining a strong presumption in favor of the plaintiff's initial forum choice. Haddad, 2008 U.S. Dist. LEXIS 29028, at *12, 2008 WL 1017743, at *4 (citations omitted). If the Court finds the balance of private interests to be in equipoise or near equipoise, it must then consider whether the public factors tip the balance in favor of a foreign forum. Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 865 (11th Cir. 2007).

"There is no definitive listing of either the private or public interests applicable here." Haddad, 2008 U.S. Dist. LEXIS 29028, at *12, 2008 WL 1017743, at *4. Relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses and costs of obtaining unwilling witnesses; the possibility of a view of the premises, if appropriate to the action; the enforceability of a judgment if obtained; and all other practical problems that make a trial of the case easy, expeditious,

and inexpensive.  See id.; Wilson v. Island Seas Invs., Ltd., 590 F.3d 1264, 1270 (11th Cir. 2009).

As an initial matter, the Court notes that Capt. Sangha, although an Indian citizen, received permanent residency in the United States in 2015.  (Doc. 14-1 at 1).  Because Capt. Sangha is a permanent United States resident, the presumption in favor of his choice of forum is "at its strongest[.]"  See SME Racks, 382 F.3d at 1101.  Thus, Navig8 must present evidence of unusually extreme circumstances and convince the Court that material injustice is manifest for the Court to disturb Capt. Sangha's forum choice.  Navig8 fails in this regard.  Navig8 argues that only one of the many potential witnesses in this case, Capt. Schild, is located in Alabama, and correctly points out that the rest are located in other states and foreign countries.  While it is true that during the pendency of his Texas lawsuit, Capt. Sangha listed potential witnesses who are spread all over the globe, there is nothing to indicate that there would be easier access to witnesses and sources of proof in Singapore than in Alabama.  Capt. Schild, arguably the most important non-party witness, is located here.  A number of Capt. Sangha's other witnesses, and Capt. Sangha himself, live in Florida and are much more accessible to this Court than they would be to any Singaporean tribunal.  Manish Gupta, the Navig8 representative whose emails form a significant basis for this litigation, has a United Kingdom telephone number, not a

Singapore number. (See Doc. 9-5 at 2, 4). The availability of compulsory process for unwilling witnesses does not favor trying this case in Singapore. Similarly, there is no basis to conclude that the costs of obtaining the attendance of unwilling witnesses would be reduced if this case were tried in Singapore. While Capt. Sangha would likely have more success enforcing a judgment rendered against Navig8 in a Singapore court, any judgment rendered in favor of Navig8 against Capt. Sangha would likely be enforced more easily in the United States. In sum, Navig8 has not demonstrated that the private interest factors weigh in favor of dismissal on the basis of *forum non conveniens*, nor has it shown that such factors are in or near equipoise. Therefore, in view of the presumption in favor of Capt. Sangha's chosen forum, a *forum non conveniens*-based dismissal is not justified.

However, following the guidance of the Eleventh Circuit, the Court will also address the public interest factors. See Leon, 251 F.3d at 1311 (finding that "even though the private factors are 'generally considered more important' than the public factors, the better rule is to consider both factors in all cases"). The public interest factors include:

> a) administrative congestion resulting from cases being tried at a site other than that of their origin; b) the burden of jury duty on a community that has no relationship to the cause of action; c) the chosen forum's interest in the dispute; d) the alternative forum's interest in the dispute; and e) the difficulties associated with applying foreign law.

31

Haddad, 2008 U.S. Dist. LEXIS 29028, at *22, 2008 WL 1017743, at
*7.  The Court has already indirectly addressed the first three of
these factors, citing case law stating that a libel injury occurs
at the place of publication and making clear that Alabama has an
interest in preventing the publication of defamatory material
within the state.   There is no question that Alabama has an
interest in this dispute and a close relationship to Capt. Sangha's
stated causes of action.   Thus, the first three public interest
factors weigh in favor of an Alabama forum.   Undoubtedly, Singapore
also has an interest in this dispute involving a Singaporean
company, and "a defendant's home forum always has an interest in
providing redress for injuries caused by its citizens."   Haddad,
2008 U.S. Dist. LEXIS 29028, at *23, 2008 WL 1017743 at *8.  Beyond
that baseline interest, however, Navig8 has pointed to no special
concern that Singapore may have in this litigation.   Alabama's
interests, which include preventing the deception of its citizens
and the interference with employment agreements involving Alabama
companies, appear to at least balance those of Singapore.   As to
the last factor, difficulties of applying foreign law, Capt.
Sangha's claims are brought under United States maritime law, the
application of which neither party disputes.   Thus, the public
interest factors also weigh in favor of Capt. Sangha, and Navig8's

motion to dismiss on the basis of *forum non conveniens* is due to be DENIED.

## C.   RULE 12(b)(6) MOTION TO DISMISS AND RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT

Navig8 argues that if Capt. Sangha's complaint is not dismissed for jurisdictional reasons, it should be dismissed for failure to state a claim upon which relief may be granted. Alternatively, Navig8 asserts that the Court should order Capt. Sangha to amend his complaint "to provide sufficient notice as to how Navig8's request that Capt. Sangha not be involved with the Miss Claudia's operations during a pending investigation and lawsuit caused or is related to the allegations in the four counts." (Doc. 9-1 at 21-22).

### 1.   Standards of Review

### i.   Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Little v. City of N. Miami, 805 F.2d 962, 965 (11th Cir. 1986) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In considering a Rule 12(b)(6) motion to dismiss, the court accepts the non-moving

party's factual allegations as true; however, the court is not required to accept a plaintiff's legal conclusions. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Rule 12(b)(6) is read in consideration of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). In <u>Iqbal</u>, the Supreme Court reiterated that although Rule 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. To survive a motion to dismiss, a complaint must state on its face a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> The well-pled allegations must nudge the claim "across the line from conceivable to plausible . . . ." <u>Twombly</u>, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S at 678 (quoting Twombly, 550 U.S at 556).

### ii. Rule 12(e) Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) is part of the "district court's case-management arsenal." Twombly, 550 U.S. at 593 n.13 (discussing some of the case management tools provided to district courts by the Federal Rules of Civil Procedure). "Motions for more definite statement are viewed with disfavor and are rarely granted." Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218, 1221 (S.D. Ala. 2005). A motion for more definite statement "is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." Aventura Cable Corp. v. Rifkin/Narragansett South Fla. CATV Ltd. Partnership, 941 F. Supp. 1189, 1195 (S.D. Fla. 1996). "Indeed, '[a] motion for a more definite statement will only be required when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself.'" Fathom Exploration, 352 F. Supp. 2d at 1221 (quoting Campbell v. Miller, 836 F. Supp. 827, 832 (M.D. Fla. 1993)). Most significantly, "[a]

motion for more definite statement is not a substitute for discovery." <u>Fathom Exploration</u>, 352 F. Supp. 2d at 1221-22.

**2. Analysis**

Navig8 urges that the Court, in ruling on its motion to dismiss under Rule 12(b)(6), should consider the email correspondence exchanged between Capt. Schild and Navig8 representatives from April 9, 2016 – April 11, 2016, despite the fact that the emails were not attached to Capt. Sangha's complaint. Navig8 contends that the substance of the email correspondence between Manish Gupta, Capt. Schild, and Prashaant Mirchandani cannot support the causes of action alleged in Capt. Sangha's complaint.

Although courts ordinarily do not consider anything beyond the face of the complaint and the documents attached thereto when deciding a 12(b)(6) motion, an exception exists when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." <u>Fin. Sec. Assurance, Inc. v. Stephens, Inc.</u>, 500 F.3d 1276, 1284 (11th Cir. 2007). Here, paragraph ten of the complaint alleges:

> Additionally, Navig8 sent emails to Capt. Johannes Schild that were damaging to Capt. Sangha's professional reputation and character, including making false and misleading statements. The emails were so disparaging that Captain Johannes Schild believed that Captain Sangha's professional reputation was damaged. These communication [sic] were false and/or misleading and

intended to damage Captain Sangha and his professional
reputation that he worked so hard to build.

(Doc. 1 at 3-4). Thus, the two emails sent by Gupta to Capt.
Schild on April 9, 2016, and the one email sent by Mirchandani to
Capt. Schild on April 10, 2016, are referenced in the complaint.
These three emails are central to Capt. Sangha's claim. Capt.
Sangha admits as much in his opposition to Navig8's motion, stating
that "[t]he emails are not just important or material to
Plaintiff's claim, they are at the root of the claim." (Doc. 14
at 5). Although the parties' interpretations of the emails diverge
wildly, neither party disputes the contents of the emails.
Finally, the emails were attached as an exhibit to Navig8's motion.
Because each of the four elements are met with regard to the two
emails sent by Gupta on April 9, 2016, and the single email sent
by Mirchandani on April 10, 2016, the Court will consider those
three emails in deciding Navig8's Rule 12(b)(6) motion.

Capt. Sangha brings each of his claims under the general
maritime law of the United States. "General maritime law is how
courts frequently refer to federal maritime common law." Morgan
v. Almars Outboards, Inc., 316 F. Supp. 3d 828, 833–34 (D. Del.
2018). "In cases governed by maritime law, absent a relevant
statute, the general maritime law, as developed by the judiciary,
applies." Goncharenko v. Royal Caribbean Cruises, Ltd., 2017 U.S.
Dist. LEXIS 86671, at *6, 2017 WL 4326694, at *3 (S.D. Fla. June

5, 2017) (citations and internal quotation marks omitted), aff'd, 734 F. App'x 645 (11th Cir. 2018). "Hence, the governing law is not the commonlaw of any single state, but rather is the general maritime law as interpreted and applied by the courts of the United States." Wells v. Liddy, 186 F.3d 505, 524 (4th Cir. 1999). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864–65 (1986).

While state law may supplement federal maritime law, it may not conflict with it, thus negatively impacting maritime law's foremost goal of uniformity. Wells, 186 F.3d at 525. When there is "no well-developed body of general maritime law" pertaining to a cause of action, "the general maritime law may be supplemented by either state law or more general common law principles." Id. (citations omitted). "In tort actions, courts frequently look to the Restatement (Second) of Torts as a source of general common law principles that should be incorporated into the general maritime law." McMellon v. United States, 338 F.3d 287, 300 (4th Cir. 2003), vacated en banc on other grounds, 387 F.3d 329 (4th Cir. 2004). See, e.g., Wells, 186 F.3d at 525 (deciding to apply the standards of the Restatement (Second) of Torts rather than state law to a maritime defamation claim because of the diversity among state defamation laws); Diamond Offshore Co. v. Survival

38

<u>Sys. Int'l, Inc.</u>, 2012 U.S. Dist. LEXIS 9293, at *19-20, 2012 WL 253381, at *7 (S.D. Tex. Jan. 26, 2012) ("There is substantial diversity amongst the states with regard to defamation law, so the Fourth Circuit, which is the only circuit to address this issue, has applied 'general common law tort principles contained in the Restatement (Second) of Torts rather than the specific law of a single state.'" (quoting <u>Wells</u>, 186 F.3d at 525)).

### i. Tortious Interference with Existing Contract (Count One) and Tortious Interference with Current and Prospective Relations and Economic Advantage (Count Three)

In the first count of his complaint, for tortious interference with existing contract, Capt. Sangha alleges that he had an employment contract with Marine Consultancy as a mooring master. (Doc. 1 at 4). Capt. Sangha alleges that "[a]fter entering into that contract, Defendants did willfully and intentionally, without privilege, interfere with the contract by engaging in the conduct described above, all to the detriment of Capt. Sangha." (<u>Id.</u>). The complaint further alleges that Defendants' interference with his existing contract with Marine Consultancy "resulted in extreme business disruption for Capt. Sangha, loss of income, moving expenses, mental anguish, emotional distress, and other financial losses including the loss of business goodwill." (<u>Id.</u>).

After re-alleging and incorporating the allegations contained in all prior paragraphs of the complaint, Capt. Sangha's third

count, claiming tortious interference with current and prospective relations and economic advantage, alleges in its entirety:

> Capt. Sangha had longstanding and continuous relationships within companies in the marine industry, including Marine Consultancy LLC and because of these relationships, there was a reasonable probability that Capt. Sangha would have continued to work [for] Marine Consultancy LLC or other companies as a mariner. In addition, there is a reasonable probability that Capt. Sangha would have entered into various other business relationships with third persons or entities, but for Defendants' improper acts and omissions, as set forth above."

(Doc. 1 at 5).

In their respective briefs, both Navig8 and Capt. Sangha cite to the elements of a claim for tortious interference with business relations under Alabama law. Those elements are: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." White Sands Group, L.L.C. v. PRS II, L.L.C., 32 So. 3d 5, 14 (Ala. 2009). However, Capt. Sangha's claims are brought under general maritime law, and thus maritime law, not Alabama state law, applies.

"Tortious interference with a contract is a cause of action under the federal maritime law." Int'l Marine & Indus. Applicators, Inc. v. Avondale Indus., Inc., 1994 U.S. Dist. LEXIS 2410, at *3, 1994 WL 71287, at *1 (E.D. La. Feb. 28, 1994) (citing River & Offshore Servs. Co. v. United States, 651 F. Supp. 276,

282 (E.D. La. 1987)).  Although some federal district courts in maritime cases have enumerated elements of an intentional interference claim,[6] "there is neither a federal statute nor an established maritime rule relating to an action for tortious interference with contractual relations in a maritime context." Int'l Marine, 1994 U.S. Dist. LEXIS 2410, at *3, 1994 WL 71287, at *1.  Thus, the Court may look to the Restatement of Torts to provide the elements of Capt. Sangha's tortious interference causes of action.  See Wells, 186 F.3d at 525.  The Court "may also look to existing state law and the solutions of other courts to similar problems."  See Int'l Marine, 1994 U.S. Dist. LEXIS 2410, at *4, 1994 WL 71287, at *1.

Courts, including the Eleventh Circuit Court of Appeals, have recognized the Restatement (Second) of Torts "as an acceptable guidepost for resolving, in a maritime context, the issue of

---

[6] See Dunham-Price Grp., L.L.C. v. Port Aggregates, Inc., 2006 U.S. Dist. LEXIS 55285, at *15, 2006 WL 2112953, at *4 (W.D. La. July 26, 2006) ("Thus, DPG may be able to recover economic damages under a theory of intentional interference with contractual relations if it can establish that PAI (1) intentionally interfered with its contractual relations, and (2) had knowledge of DPG's contractual obligations."); CXY Energy, Inc. v. Jurisch, 1992 U.S. Dist. LEXIS 12863, at *4, 1992 WL 211649, at *2 (E.D. La. Aug. 17, 1992) ("[P]laintiff may have a claim for intentional interference with contractual relations, under the general maritime law. To prevail on this claim, plaintiff must establish that (1) the defendants intentionally interfered with plaintiff's contractual relations, and (2) that defendants had knowledge of plaintiff's contractual obligations.").

whether a contract has been tortuously interfered with." See id.
(citing Furness Withy (Chartering), Inc. v. World Energy Sys.
Assocs., Inc., 772 F.2d 802, 807 (11th Cir. 1985)). As standards
for recovery for tortious interference vary between states, this
Court will look to sections 766[7] and 766B[8] of the Restatement
(Second) of Torts to "establish[] standards for determining the
issue of tortious interference with a contract." See Int'l Marine,
1994 U.S. Dist. LEXIS 2410, at *4-5, 1994 WL 71287, at *1; Furness
Withy, 772 F.2d at 807.

---

[7] Section 766 of the Restatement (Second) of Torts provides in
relevant part:

> One who intentionally and improperly interferes with the
> performance of a contract . . . between another and a
> third person by inducing or otherwise causing the third
> person not to perform the contract, is subject to
> liability to the other for the pecuniary loss resulting
> to the other from the failure of the third person to
> perform the contract.

Restatement (Second) of Torts § 766 (1977).

[8] Section 766B of the Restatement (Second) of Torts provides in
relevant part:

> One who intentionally and improperly interferes with
> another's prospective contractual relation . . . is
> subject to liability to the other for the pecuniary harm
> resulting from loss of the benefits of the relation,
> whether the interference consists of (a) inducing or
> otherwise causing a third person not to enter into or
> continue the prospective relation or (b) preventing the
> other from acquiring or continuing the prospective
> relation.

Id. at § 766B.

As to counts one and three, Navig8 primarily argues that the emails exchanged between its representatives and Capt. Schild affirmatively evidence Navig8's absence of intent to interfere, which is a required element in claims for tortious interference with both existing and prospective contractual relations. See Dunham-Price Grp., 2006 U.S. Dist. LEXIS 55285, at *15, 2006 WL 2112953, at *4 ("A maritime plaintiff may recover for interference with its contractual relations if 'he shows that the interference was intentional or knowing.'" (citing Jurisch, 1992 U.S. Dist. LEXIS 12863, at *4, 1992 WL 211649, at *2, (quoting Dick Meyers Towing Serv., Inc. v. U.S., 577 F.2d 1023, 1025 (5th Cir. 1978), cert. denied, 440 U.S. 908 (1978))). Navig8 asserts that the email exchange "affirmatively demonstrates the lack of intent to interfere," and that the exchange was simply "a polite discussion regarding the performance of Marine Consultancy's contract with Navig8."[9] (Doc. 9-1 at 17). Capt. Sangha responds that he has sufficiently alleged the element of intent by asserting that Navig8 intentionally interfered with his contractual relationship by sending emails containing false and misleading statements to Capt. Schild and by alleging that Capt. Schild "was informed that Navig8 required that he terminate Capt. Sangha." (Doc. 14 at 12).

---

[9] Despite Navig8's allusion to a contract with Marine Consultancy, there is nothing in the complaint or in the emails asserting or evidencing the existence of any such contract.

The Restatement is clear that interference must be both intentional and improper to be tortious. Although Navig8 frames the issue solely as one of intent, Navig8's argument addresses the *purpose* of the allegedly tortious communications, and therefore relates to both elements. An act is intentional if "the actor desires to cause consequences of his act, or . . . he believes that the consequences are substantially certain to result from it." See Restatement (Second) of Torts § 8A (1977); id. at § 766B cmt. d). Capt. Sangha's complaint alleges that Navig8 intentionally and maliciously interfered with his contract with Marine Consultancy by requiring that Marine Consultancy terminate his employment, by making false and misleading statements in communications with his supervisor, and by sending emails to his supervisor containing false and misleading statements. Thus, unless the contents of the three emails sent by Navig8 representatives to Capt. Schild conclusively establish that Navig8 did not intentionally or improperly interfere with Capt. Sangha's employment contract, the Court must find that Capt. Sangha has sufficiently set forth both of these elements of a tortious interference claim.

Undoubtedly, the emails sent by Gupta and Mirchandani call into serious question Capt. Sangha's allegation that "Navig8 required that Marine Consultancy terminate Captain Sangha from employment." However, as noted *supra*, a fair reading of the

complaint, particularly paragraphs nine and ten, reflects two distinct forms of interference by Navig8.  This is bolstered by Capt. Sangha's use of the word "[a]dditionally" in paragraph ten. The Court can reasonably infer that paragraph ten refers to the emails sent to Capt. Schild by Gupta and Mirchandani, while paragraph nine refers to separate communications directed to Capt. Schild through other channels to effectuate Capt. Sangha's termination and impugn his reputation.  While these allegations may or may not be borne out going forward, the Court cannot, at this stage, simply accept Navig8's assertion that Capt. Sangha's claim is based *solely* on the three emails, when his pleadings suggest otherwise.

In addition, the Court is informed by the comments to the Restatement, which make clear that false representations generally make an interference improper and that economic pressure, such as refusing to deal with a party if it continues a relationship with another party, can be improper in certain situations.[10]  Navig8

---

[10] Section 767 cmt. c states in relevant part:

> *Misrepresentations.* Fraudulent misrepresentations are also ordinarily a wrongful means of interference and make an interference improper.  A representation is fraudulent when, to the knowledge or belief of its utterer, it is false in the sense in which it is intended to be understood by its recipient. . . . In some circumstances one who is liable to another for intentional interference with economic relations by inducing a third person by fraudulent misrepresentation not to do business with the other may also be liable

contends that the emails from Gupta and Mirchandani affirmatively demonstrate a lack of intent to interfere. The Court does not agree. The content of the emails does not affirmatively show that Navig8 did not intend to interfere or that it did not act improperly. To illustrate, in one email, Gupta stated that Capt. Sangha was "in command" of the M/V Miss Claudia during the collision with the M/V Euronike. (<u>See</u> Doc. 9-5 at 4). However,

---

under other rules of the law of torts. Thus if the representation is also defamatory of the other, the actor may be liable under the rules relating to defamation. . . . The tort of intentional interference thus overlaps other torts. But it is not coincident with them. One may be subject to liability for intentional interference even when his fraudulent representation is not of such a character as to subject him to liability for the other torts. And, on the other hand, one may be liable for the other torts as for a defamatory statement negligently believed by him to be true, without being liable for intentional interference because of his good faith.
. . .
*Economic pressure.* Economic pressure of various types is a common means of inducing persons not to deal with another, as when A refuses to deal with B if B enters into or continues a relation with C. . . . The question whether this pressure is proper is answered in the light of the circumstances in which it is exerted, the object sought to be accomplished by the actor, the degree of coercion involved, the extent of the harm that it threatens, the effect upon the neutral parties drawn into the situation, the effects upon competition, and the general reasonableness and appropriateness of this pressure as a means of accomplishing the actor's objective.

Restatement (Second) of Torts § 767 cmt. c (1977).

in Capt. Sangha's complaint, he alleges that "Captain McCoy" was also serving as a captain aboard the M/V Miss Claudia at the time of the collision, and it was him, as opposed to Capt. Sangha, who was operating the M/V Miss Claudia and gave the deficient orders that resulted in a casualty involving M/V Euronike. (Doc. 1 at 2). Further, Capt. Sangha alleges that in addition to the emails, Navig8 employees also reached out to his employer to demand his termination and made false and misleading statement against him. (See id. at 3). These allegations preclude the Court from finding, at the motion to dismiss stage, that Navig8 did not make false and misleading statements and did not intend to disparage Capt. Sangha's reputation or negatively impact his employment. Accordingly, the Court concludes that count one of Capt. Sangha's complaint sufficiently states a plausible claim for relief for tortious interference with existing contract.

As to count three, Navig8 makes an additional argument in favor of dismissal, asserting that Capt. Sangha has failed to allege any specific business relationships, other than his employment contract with Marine Consultancy, that were harmed by the alleged conduct. (Doc. 9-1 at 17). In count three, Capt. Sangha alleges that he "had longstanding and continuous relationships within companies in the marine industry, including Marine Consultancy LLC and because of these relationships, there was a reasonable probability" that he would have continued to work

for Marine Consultancy or other companies as a mariner. (Doc. 1 at 5). Count three further alleges that "there is a reasonable probability that Capt. Sangha would have entered into various other business relationships with third persons or entities, but for Defendants' improper acts and omissions, as set forth above." (Id.). As Navig8 points out, count three is somewhat duplicative of count one, to the extent it alleges tortious interference with Capt. Sangha's existing employment with Marine Consultancy. Capt. Sangha's response reinforces this view by stating that counts one and three "are both claims for the tortious interference with Capt. Sangha's employment relationship with Marine Consultancy" and by listing the elements of only one cause of action, not two. (See Doc. 14 at 12).

As has already been made clear, the Court is evaluating the two tortious interference counts under the standards established in the Restatement (Second) of Torts. The Restatement distinguishes between interference with the performance of existing contracts (§ 766) and interference with prospective contractual relations (§ 766B). The Court evaluated count one under the existing contracts framework. We evaluate count three under the standards for interference with prospective contractual relations set forth in § 766B.

When considered along with the incorporated allegations of the complaint's prior paragraphs, Capt. Sangha's allegations that

he had relationships within the marine industry, including Marine Consultancy, that there is a "reasonable probability" he would have continued to work as a mariner for Marine Consultancy or other companies, and that there is a "reasonable probability" he "would have entered into various other business relationships with third persons or entities" if not for the Defendants' allegedly tortious conduct, sufficiently state a claim for tortious interference with prospective contractual relations. Although the complaint alleges that Capt. Sangha had an existing employment contract with Marine Consultancy at the time of the alleged torts and states a claim for interference with that existing contract in count one, this does not foreclose the possibility that Capt. Sangha had prospective contractual or business relations with Marine Consultancy outside of his existing employment as a mooring master. Further, the fact that the complaint does not specifically name any entity other than Marine Consultancy with whom Capt. Sangha had a prospective business relationship does not warrant dismissal of count three. See Intersport, Inc. v. T-Town Tickets LLC, 896 F. Supp. 2d 1106, 1114 (N.D. Ala. 2012) (finding that allegations of intentional interference with plaintiff's business relationships with "customers" sufficiently stated a claim for tortious interference with business relations). While count three is admittedly not a model of clarity or specificity, it does suffice to state a claim for tortious interference with prospective

contractual relations, and it is not so vague or ambiguous that Navig8 cannot respond in good faith or without prejudice to itself. For the foregoing reasons, Navig8's motion to dismiss both of Capt. Sangha's tortious interference claims, counts one and three, and Navig8's motion for more definite statement, as it relates to those claims, are due to be denied.

### ii. Defamation (Count Two)

In the absence of a well-developed body of general maritime law of defamation, the Court will look to "the common law as compiled in the Restatement (Second) of Torts" to "control our evaluation" of Capt. Sangha's defamation claim. See Wells, 186 F.3d at 525; Diamond Offshore, 2012 U.S. Dist. LEXIS 9293, at *19-20, 2012 WL 253381, at *7. The Restatement (Second) of Torts lists the following elements for a defamation claim:

> (a)  a false and defamatory statement concerning another;
> (b)  an unprivileged publication to a third party;
> (c)  fault amounting to at least negligence on the part of the publisher; and
> (d)  either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Restatement (Second) of Torts § 558 (1977).

Navig8 first asserts that Capt. Sangha has failed to plead what "false statements" and "half-truths" were made by Navig8. (Doc. 9-1 at 18). Navig8 argues that in order to state a claim

for defamation, Capt. Sangha must plead what allegedly false and defamatory statements were made by Navig8. (Id.). Next, Navig8 references the email exchange, contending that the emails contain no false or defamatory statements. (Id.). Navig8 maintains that it went "out of its way to compliment Capt. Sangha and note his experience and how fortunate Marine Consultancy was to have him." (Id.). Capt. Sangha counters that "[t]he statements in the emails implied" that he was somehow responsible for the collision. (Doc. 14 at 12). Capt. Sangha also argues that Navig8's statements that they did not want him involved in the operations he was hired by Marine Consultancy to perform because of the collision were "false" because Capt. Sangha was not at fault in the collision. (Id. at 12-13).

With regard to Navig8's first argument, the Court notes that "in federal court, a defamation claim can be pled generally, so long as it meets the requirements of Rule 8(a) and Twombly." Holtzman v. B/E Aerospace, Inc., 2008 U.S. Dist. LEXIS 5215, at *6, 2008 WL 214715, at *2 (S.D. Fla. Jan. 24, 2008) (citing Hatfill v. New York Times Co., 416 F.3d 320, 329-30 (4th Cir. 2005)). However, "countless district courts have found that the requirements of Rule 8 have not been met in cases where libel and slander claims failed to allege the substance of the statements and/or the time and place in which they were made." PAI Corp. v. Integrated Sci. Solutions, Inc., 2007 U.S. Dist. LEXIS 33819, at

*24-25, 2007 WL 1229329, at *8 (N.D. Cal. Apr. 25, 2007). <u>See</u> <u>also</u> <u>McKenzie v. MCI Worldcom, Inc.</u>, 2001 U.S. Dist. LEXIS 10122, at *3, 2001 WL 309409, at *1 (D. Kan. Mar. 22, 2001) ("Specifically, plaintiff must include in his claim for defamation the substance of the statement made and the identity of the person(s) to whom the statement was allegedly made."); <u>Hides v.</u> <u>CertainTeed Corp.</u>, 1995 U.S. Dist. LEXIS 10849, at *8, 1995 WL 458786, at *3 (E.D. Pa. July 26, 1995) ("While this allegation identifies the substance of the alleged defamatory statement, it does not identify who made it or who received it. The Court takes judicial notice of the fact that defendant CertainTeed Corporation employs thousands of people all over the World who communicate with their counterparts in literally countless transactions. Therefore, even under the liberal pleading requirements of Rule 8(a), this allegation is not specific enough to put the defendant on notice and to permit the defendant to respond to it in good faith."); <u>Fiedler v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 2006 WL 8432489, at *2 (S.D. Fla. Feb. 22, 2006) ("I agree with Defendant that Plaintiff's defamation claim is insufficiently pled. Among other things, Plaintiff has not identified who made the statement, a third party to whom the statement was made, and when the statement was published."); <u>Hawkins v. Kiely</u>, 250 F.R.D. 73, 76 (D. Me. 2008) ("The Complaint is too vague to be intelligible in that it lacks nearly all basic details courts have

considered essential to enable a defendant to respond to a defamation claim. It identifies only one allegedly defamatory statement but suggests, by use of the word 'statements' and the phrase 'without limitation,' that others were made. It does not make clear when the one identified statement, let alone any of the unidentified additional statements, was made, to whom or by what means of publication.").

Although paragraph nine of the complaint generally alleges that Navig8 made false and misleading statements regarding Capt. Sangha, it fails to identify even the general substance of such statements, who made the statements, or their manner of publication. Further, although paragraph ten alleges that Navig8 sent emails to Capt. Schild that included false and misleading statements, it is silent as to who sent these emails on behalf of Navig8 and what allegedly defamatory statements the emails contained. Finally, while the complaint does provide a general chronological frame of reference for when the statements were made, it does not list the dates on which any of the alleged statements were made.

Despite these deficiencies, dismissal of Capt. Sangha's defamation claim pursuant to Rule 12(b)(6) is not the proper remedy. See Baker v. Joseph, 2013 U.S. Dist. LEXIS 192318, at *12, 2013 WL 12094322, at *4 (S.D. Fla. May 30, 2013). Capt. Sangha has at least generally alleged each of the elements for

defamation set forth in the Restatement, and the Court has for consideration some of the complained-of communications, which contain at least one plausibly defamatory statement. Because it is not clear which specific statements Capt. Sangha bases his defamation claim on, the proper procedure is for the Court to require a more definite statement consistent with Federal Rule of Civil Procedure 12(e).

Although motions for more definite statements are generally disfavored, such motions are regularly granted when a complaint does not set forth minimum requirements for a defamation claim, such as the identification and substance of the allegedly defamatory statements, the person to whom the statements were made, or the means of publication. See, e.g., Grant v. First Premier Bank, 2017 U.S. Dist. LEXIS 45815, at *2, 2017 WL 1153138, at *1 (D. Kan. Mar. 28, 2017) ("Despite the disfavor of these motions, this Court has held that to survive a Rule 12(e) motion for more definite statement on a defamation claim, the Plaintiff must include the substance of the statement, the identity of the person(s) to whom the statement was allegedly made, and the time and place of the alleged statement."). Thus, Capt. Sangha must amend his complaint to include a more definite statement of his defamation claim. The amended complaint must identify each alleged defamatory statement and include the substance of each such statement, identify who made and received each alleged defamatory

statement (if known), and state the time, place, and means of publication of each alleged defamatory statement (if known).

For the foregoing reasons, Navig8's motion to dismiss Capt. Sangha's defamation claim, count two, pursuant to Rule 12(b)(6), is due to be denied at this time. However, Navig8's motion for more definite statement, as it relates to Capt. Sangha's defamation claim, is due to be granted.

### iii. Intentional Infliction of Emotional Distress (Count Four)

Although maritime law does not expressly provide a cause of action for emotional distress, plaintiffs may bring intentional infliction of emotional distress ("IIED") claims under general maritime law. Elbaz v. Royal Caribbean Cruises, Ltd., 2017 U.S. Dist. LEXIS 5417, at *10, 2017 WL 3773721, at *5 (S.D. Fla. Jan. 12, 2017) (citations and internal quotation marks omitted); see also Markham v. Carnival Corp., 2012 U.S. Dist. LEXIS 194424, at *7, 2012 WL 12866787, at *3 (S.D. Fla. Dec. 3, 2012); Fawkner v. Atlantis Submarines, Inc., 135 F. Supp. 2d 1127, 1136 (D. Haw. 2001). Since there is no maritime law concerning IIED claims, courts regularly employ the Restatement (Second) of Torts to evaluate such claims. See, e.g., Wallis v. Princess Cruises, Inc., 306 F.3d 827, 841 (9th Cir. 2002). Courts also look to state law for guidance, particularly when considering whether the conduct alleged is sufficiently extreme and outrageous to form the basis

for an IIED claim.  See, e.g., Negron v. Celebrity Cruises, Inc.,
2018 U.S. Dist. LEXIS 113857, at *6-7, 2018 WL 3369671, at *2 (S.D.
Fla. July 10, 2018) (surveying Florida and maritime cases
determining whether alleged conduct is sufficiently outrageous to
support IIED claims).

Section 46 of the Restatement (Second) of Torts provides, in
relevant part, that "[o]ne who by extreme and outrageous conduct
intentionally or recklessly causes severe emotional distress to
another is subject to liability for such emotional distress . . .
." Restatement (Second) of Torts § 46 (1965). Count four of Capt.
Sangha's complaint contains two paragraphs, the first of which
incorporates the allegations of the complaint's prior paragraphs,
and the second of which states that "Defendants' intentional
actions as described above were extremely outrageous and as a
direct and proximate result of those actions, Captain Sangha has
suffered extreme and severe emotional distress." (See Doc. 1 at
5). Quoting dicta from the district court's opinion on
jurisdiction in Capt. Sangha's Texas lawsuit, Navig8 asserts that
there are no allegations of conduct that is so outrageous or
extreme and beyond the bounds of decency to support a claim for
IIED. (See Doc. 9-1 at 19). In turn, Capt. Sangha argues that
sending false emails intending to damage a person's reputation and
cause him to lose his job is extreme, outrageous, and certain to
cause severe emotional distress. (See Doc. 14 at 13).

"Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law for the court to decide, not a question of fact." <u>Broberg v. Carnival Corp.</u>, 303 F. Supp. 3d 1313, 1317–18 (S.D. Fla. 2017). There is no comprehensive or definitive list of what constitutes outrageous conduct. <u>Id.</u> However, the Restatement (Second) of Torts provides important guidance, stating:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965).

Accordingly, the Court must determine whether the alleged conduct by Navig8 crosses all bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized community. The undersigned notes that Capt. Sangha's IIED count does not contain any stand-alone factual allegations. It instead relies on Navig8's alleged defamation of Capt. Sangha and demand for his termination. Were the three emails sent by Navig8 representatives the sole basis for Capt. Sangha's IIED claim, the Court would

readily conclude that they do not rise to the level of outrageous conduct required to state an IIED claim. However, as noted *supra*, Capt. Sangha alleges that in addition to the emails, Navig8 communicated other false and misleading statements to his employer designed to effectuate his termination and ruin his professional reputation. Given that the Court has determined that Capt. Sangha's vague assertions necessitate the filing of a more definite statement, the Courts finds, out of an abundance of caution, that it would be premature to dismiss the IIED claim at this time. Accordingly, rather than dismissing the IIED count at this time, the better procedure is to require Capt. Sangha to provide a more definite statement as detailed above, that sufficiently details the alleged defamation and the additional false and misleading statements that Navig8 representatives are alleged to have communicated to Capt. Sangha's employer.

## III. **CONCLUSION**

For the reasons set forth above, the undersigned RECOMMENDS that Navig8's motion to dismiss for lack of personal jurisdiction be DENIED; that Navig8's motion to dismiss on the basis of *forum non conveniens* be DENIED; that Navig8's motion to dismiss for failure to state a claim be DENIED; and that Navig8's motion for more definite statement be GRANTED IN PART and DENIED IN PART, as follows:

(Count One) Tortious Interference with Existing Contract – Navig8's motion for more definite statement, as it relates to Capt. Sangha's tortious interference with existing contract claim, is due to be DENIED;

(Count Two) Defamation – Navig8's motion for more definite statement, as it relates to Capt. Sangha's defamation claim, is due to be GRANTED, as set forth above;

(Count Three) Tortious Interference with Current and Prospective Relations and Economic Advantage – Navig8's motion for more definite statement, as it relates to Capt. Sangha's tortious interference with current and prospective relations and economic advantage claim, is due to be DENIED;

(Count Four) Intentional Infliction of Emotional Distress – Navig8's motion for more definite statement, as it relates to the allegations upon which Capt. Sangha's claim for intentional infliction of emotional distress is based, is due to be GRANTED, as set forth above.

Based upon the stipulation of the parties, the undersigned also recommends that Defendant Navig8 Group be DISMISSED without prejudice as a Defendant in this matter.

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14)

days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **27th** day of **February, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
